BUCK, Appellant, vs. RACINE BOAT COMPANY, Respondent.

*March 6—April 3, 1923.*

*Sales: Goods specially constructed: Substantial compliance with contract: Notice of non-acceptance by buyer: Reasonable time: Question for jury.*

1. The question whether the purchaser has accepted goods delivered to him by the seller is ordinarily one of fact to be determined by the jury; but where there is no conflict in the evidence, the question as to whether or not the acts of the purchaser constituted an acceptance is one of law.

2. A specially designed motor boat was received and paid for by the purchaser on December 11th, placed in the water on the 12th, and its draft determined on the 13th or 14th. On the 16th, and without delay after the condition of the boat had been fully ascertained by the buyer, he notified the seller that it was not in accordance with the contract, but proposed, on designated conditions, to waive certain defects and accept it. Hearing nothing from the seller, on January 8th the buyer wrote that he was holding the boat subject to advice from the seller as to its disposition. The jury having found that the boat was not constructed in substantial compliance with the contract, it is *held* as a matter of law, under the facts of this case, that the buyer gave timely notice of his non-acceptance under sec. 1684t—48, Stats., and was entitled to recover the purchase price paid.

OWEN, J., dissents.

APPEAL from a judgment of the circuit court for Racine county: S. E. SMALLEY, Judge. *Reversed.*

Contract. The plaintiff is a resident of Apalachicola, Florida. The defendant is engaged in building boats at Racine, Wisconsin. A contract was entered into by correspondence between the parties by which the defendant undertook to build for the plaintiff a specially designed motor-boat. In the course of the contract a sketch and specifications were submitted. The boat was to be twenty-five feet in length, with a beam six feet four inches and a draft of twenty-two inches, with a cabin having glass windows forward, and on either side; the cabin to have four feet six inches headroom. Two six-inch portholes were specified to

be installed on either side of the forward raised deck; there was to be a side steering wheel installed aft of the motor; a well-riveted and soldered gasoline tank was specified, and the equipment was to include six cork life-preservers; a 17—25 horsepower Sterling motor was to be installed complete ready to operate; all materials and workmanship were to be first-class quality, and work to be done in a skilful manner; the boat to be delivered f. o. b. cars Apalachicola, Florida.

The plaintiff paid $2,000 on the agreed purchase price of $3,625 during the course of construction. The boat was shipped with bill of lading attached to draft, and the remainder was paid upon the arrival of the boat at Apalachicola. It arrived at Apalachicola on December 11, 1920. The plaintiff made an inspection of the boat before it was unloaded from the railroad car, which examination revealed certain defects in the construction. After making the examination he paid the draft. The boat was unloaded and placed in the water, when he discovered certain other defects, and on December 16th plaintiff wrote the defendant as follows:

"Inclosed you will find 'freight bill' for $384.19 which I paid as bill will show and as per your telegram of December 13th. Please mail me remittance to cover this at once.

"Now, a few other things which you are short on. As per contract you were to furnish six life-preservers. You didn't send them. Please ship to me at once.

"You were to furnish two six-inch portholes in each side of for'd raised deck. You only furnished one. Please express me the other two at once and I will have them put on.

"There is no inside stuffing box on for'd end of deadwood interia. Of course this is absolutely necessary, and not only belongs to an equipped boat but is a part of the regular equipment furnished by the Sterling Engine Co. with the motor. With the motor comes an outside stern bearing and an inside stuffing box. You have put the inside stuffing box on the outside and keep the stern bearing. Please express me this one and one-eighth stern bearing and

I will have it installed. As it is, there is no bearing at all between the engine and the outside stuffing box. This is an absurdity. Evidently you had an amateur a hold of this job.

"Now, in my first correspondence to you I stated plainly that I wanted a 'Blood Bros.' universal coupling just aft of the engine, and as matter of regular engineering and necessity I stated that I wanted an intermediate thrust bearing directly aft of the universal coupling. You did furnish a coupling, but you did not furnish the one and one-eighth inch intermediate thrust bearing. Now please send me this article by express at once.

"Now, these articles I call your attention to are things you should have done before the boat left your factory. They are every one an absolute necessity. My boat is now tied up and will have to remain so until these things are fixed. You were to furnish the boat and all fixtures completed ready to run. You positively have not done so.

"There are a few other mistakes you made which are unchangeable and I am planning to pass them by, but I must insist on you coming up with the balance of your obligation at once.

"I must confess that I am disappointed in the service rendered me by the *Racine Boat Co.* in this matter. I hope I have not misplaced my confidence and that you will 'come clean' promptly. I have, most certainly, handsomely paid you already—now you must finish your job.

"Please furnish me with absolutely first-class articles as per my request herein."

The defendant made no reply to the letter of December 16th, but on January 5, 1921, shipped by freight a box of life-preservers and some parts of the other equipment. Hearing nothing from the defendant, the plaintiff on January 8, 1921, wrote a letter, the material parts of which are as follows:

"The boat shipped me is not the boat contracted for and I will not accept the substitution. I have no facilities for housing your boat, but I am holding it here subject to your advice as to its disposition and will use the best means at my command to take care of it. I have anchored it up High

Bluff creek near where I live in a safe harbor, and it not only has not been used but is not in condition to be operated.

"A few of the many respects in which the boat varies from the contract are as follows:

"The draft of the boat just as it was unloaded and with nothing aboard but equipment is twenty-four inches, whereas the contract calls for twenty-two inch draft. This is a material variation for the reason that I contracted for the very deepest draft boat I could use in the waters intended to be navigated.

"The contract provides for side steering wheel located a little aft of the motor in addition to the steering wheel at forward end of the cabin. The boat has no such steering wheel.

"The contract calls for oak towing posts forward, and aft. The aft towing post has been omitted entirely.

"The contract specifies two six-inch port lights of brass on each side of raised deck. The boat has only one port on each side.

"Six block cork life-preservers specified in the contract are omitted.

"The thrust bearing aft of the universal joint and the inside stuffing box is omitted. The construction of the deadwood makes it impracticable to insert the inside stuffing box or bearing, and without, the shaft whips and the installation is incompetent and unworkmanlike.

"The engine is improperly installed, not fitting the bed but being wedged in place with soft-wood splinters in such manner that the operation of the engine in its present condition would be most likely to result in the delinement of the crank shaft and destruction of the bearings. The bolts fastening the engine bed down go through the bottom of the boat and come out exactly between two plank butts. It takes no expert to condemn the plank joints beneath the engine bed as well as the installation of bolts at this point.

"The contract specifies heavy galvanized steel gasoline tank, well riveted and soldered. The tank furnished is of light galvanized iron not riveted.

"The installation of the tank is a disgrace to the workmen responsible. The opening cut in the deck for the filler pipe is about ten inches aft of the opening in the tank. Elbows and nipples were used to connect the two openings,

but since gasoline will not run up hill it is impossible to fill the tank by pouring gasoline into the filler pipe. Also if the gasoline could be put in the tank there is no way that a sounding rod could be used to determine its contents.

"One-fourth inch cracks in the joints on the transom were hidden with putty, which has fallen out leaving open ugly cracks.

"These are a few of the glaring deficiencies and variances from the contract and there are many others not here enumerated.

"The contract calls for the completion of the work in a skilful manner, first-class materials and workmanship. I feel sure that your inspectors have never passed this boat, after comparing it with the specifications of the boat ordered by me. The essential parts necessary for the proper installation of the motor are furnished by the manufacturer of the motor, but some of them have been absolutely omitted in installing the motor in this boat. The contract required delivery of the boat ready for operation upon being supplied with fuel, but the motor cannot be operated until numerous changes have been made and defects remedied.

"I contracted for this boat mostly for use this winter and so advised you. Delivery was delayed, but if the boat had been up to specifications when delivered it could still have served my purpose. It was impossible, however, for it to have been put in shape after its delivery in time to have been any service to me this winter.

"You have so handled the matter so as to procure not only the whole purchase price before the delivery of the boat, but you have also forced me to pay the freight, contrary to the contract. I cannot conceive of any claim that you can possibly make to fulfilment of the contract, and I will welcome a visit and inspection of the boat by any officer or employee of your company. I permitted you to procure the advantage of having more than full payment before the boat was delivered to me because I had received such reports as to give me a very high opinion of your company and I had agreed to pay a sufficient sum to insure your ability to give me such a boat as I desired.

"I am still relying on your good reputation for fair treatment and I expect that you will immediately refund my money and advise me as to the disposition of the boat,

which I hold subject to your order. It is just as it was received by me and will receive the best care in the meantime that I can give it, but I do not assume any greater responsibility in the matter. The importance of this matter merits immediate attention, and I trust you will advise me at once what I may expect in the premises."

On the 13th day of June, 1921, the plaintiff commenced this action. The complaint states two causes of action: first, to recover the contract price of $3,625, upon the theory that the defendant had failed to perform the contract according to its terms and was therefore not entitled to retain the purchase price which had been paid to it by the plaintiff; and second, to recover damages resulting from the failure of the defendant to deliver a motor-boat built according to the plans and specifications, which formed the basis of the contract. The case was tried to a jury and a special verdict returned, by which the jury found:

(1) The boat furnished was not constructed in conformity with the contract between the parties;

(2) The boat was not built in substantial compliance with the contract between the parties;

(3) That plaintiff accepted the boat;

(4) That plaintiff sustained damages amounting to $1,000 because of the failure of the defendant to construct the boat according to contract.

Upon the verdict the defendant moved for judgment dismissing the plaintiff's complaint; the plaintiff moved for judgment upon the first cause of action for $3,625 notwithstanding the verdict; that the court change the answer of the jury to the third question from "Yes" to "No," and for judgment upon the verdict as changed; for judgment upon the verdict for $1,000 upon the second cause of action; and in the event that the prior motions were denied, that the court set aside the verdict and grant a new trial. The court granted the defendant's motion, denied plaintiff's motions, and from the judgment dismissing the plaintiff's complaint the plaintiff appeals.

For the appellant there was a brief by *Thompson, Myers & Kearney,* and oral argument by *Thomas M. Kearney, Jr.,* all of Racine.

For the respondent there was a brief signed by *Foley & Brach,* attorneys, and *A. R. Janecky,* of counsel, all of Racine, and oral argument by *Jerome J. Foley.*

ROSENBERRY, J.　The vital question in this case is whether or not the evidence is sufficient to sustain the answer to question No. 3 of the special verdict, by which the jury found that the plaintiff accepted the boat delivered to him by the defendant.　Ordinarily the question of acceptance is a question of fact to be determined by the jury; but where, as here, there is no conflict in the evidence, the question of whether or not the acts of the plaintiff constituted an acceptance is a question of law.　Williston, Sales, § 451 and cases cited; *Knobel v. J. Bartel Co.* 176 Wis. 393, 187 N. W. 188.

The section of the Uniform Sales Act applicable is sec. 1684*t*—48:

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

In this case the purchaser received the goods on December 11, 1920.　He caused the boat to be unloaded from the flat-car and placed in the water and tested.　After making a thorough test and careful examination, the purchaser, on December 16, 1920, wrote the defendant the letter set out in the statement of facts.　It is the contention of the respondent that by the writing of this letter and retaining possession of the boat the plaintiff accepted the boat as delivered. With this contention we cannot agree.　This letter is notice to the seller that the goods delivered are not in accordance with the

contract and a proposal that, if certain conditions are complied with by the seller, certain defects will be passed by and the boat accepted. This, instead of being an intimation as claimed that the buyer will accept the goods as delivered, is an intimation that unless the seller conforms to the proposal the goods will not be accepted. At any rate it constitutes no intimation of acceptance. Had the seller accepted the buyer's proposal and remedied the defects complained of, no doubt the buyer would have been bound by his proposal, but the seller did not pursue that course. The seller totally ignored the proposal and never complied with the buyer's demands nor attempted to do so.

It is said, however, that the rejection was not made within a reasonable time. It appears that the boat arrived on the 11th day of December, 1920, was placed in the water on Sunday, the 12th; that the draft of the boat was determined on the 13th or 14th, and the letter written on December 16th notifying the seller of the defective condition of the boat. The question as to whether or not the buyer notified the seller within a reasonable time was not specifically submitted, but by the instructions was included in the jury's consideration of question 3 as to acceptance. Under the facts in this case we think it must be said as a matter of law that the letter of December 16th was written within a reasonable time.

It is quite clear from the evidence that the examination and inspection of the boat continued during the time after it was unloaded up to or at least prior to the day the letter was written, and there are no circumstances to indicate that there was any delay whatever after the condition of the boat had been fully ascertained by the buyer. The jury having found by the answers to questions 1 and 2 that the boat as constructed did not substantially comply with the terms of the contract and the buyer having notified the seller within a reasonable time, such notice having been followed by the letter of January 8th, the plaintiff was within his legal rights

in refusing to accept the boat, and he is entitled to recover the purchase price. .

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as indicated in the opinion.

OWEN, J. (*dissenting*). I think that by the letter of December 16th the plaintiff indicated his acceptance of the boat as a substantial compliance with the contract. The missing equipment of which he complained constituted an almost negligible proportion of the contract price. His letter is an insistence that defendant furnish the missing equipment. There is no intimation that he will refuse to accept the boat unless the missing items are supplied. I think that the jury not only correctly answered question No. 3, but that the answer to that question indicates the only reasonable construction that can be placed on the letter of December 16th. I therefore dissent.